# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALDO MEDRANO AYALA,<br><br>                      Petitioner,<br>v.<br><br>ROBERT L. AYERS, JR., Warden of California State Prison at San Quentin,<br><br>                      Respondent. | CASE NO. 01cv741 BTM<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL COMPLIANCE WITH SUBPOENA DUCES TECUM** |

Respondent has filed a motion to compel Eric Hart to comply with a subpoena duces tecum that was issued to him. On October 28, 2009, the Court held a hearing on the motion. For the reasons discussed below, Respondent's motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

This action is a death penalty habeas case. In 1988, Petitioner Ronaldo Medrano Ayala was found guilty of three counts of murder, one count of attempted murder, one count of robbery, and three counts of attempted robbery. This Court has granted Petitioner an evidentiary hearing on certain ineffective assistance of counsel claims and prosecutorial misconduct claims. The evidentiary hearing is currently scheduled to take place in March of 2010.

Eric Hart is the author of an unpublished non-fiction book about the Ayala case and the circumstances surrounding the case. The book is based on Hart's early involvement in the case as an investigator for the Ayala defense team as well as on Hart's independent investigation after he was no longer working for defense counsel. Hart explains that although the book is non-fiction, it conveys Hart's opinion or slant regarding the events and evidence. Hart is waiting until after the conclusion of this case to pursue publication of his book.

Hart completed his first draft of the book in the 1990s. In 2001, an investigator for Ayala's counsel in this case called Hart and asked if she could read his manuscript. Hart agreed, and the investigator picked up a copy of the manuscript, which was close to 800 pages. Hart agreed that Ayala's attorneys could also read the manuscript.

Last summer, Hart asked Mr. Belter for the return of the manuscript. Mr. Belter returned the manuscript, but Hart states that as much as one-third of the manuscript was missing. Hart did not keep a copy of the version of the manuscript that was given to the investigator. No electronic version of this manuscript exists because the electronic document was subsequently edited. The manuscript has been re-edited several times. The last edit of the manuscript was in 2005. Hart believes that the portions of the manuscript that pertain to the evidentiary hearing have remained the same throughout the editing process.

On September 15, 2009, the Court authorized Respondent to issue a subpoena duces tecum to Mr. Hart to produce any manuscript, book, or draft thereof regarding Petitioner's case. The Court also issued a protective order, providing that the book was to be used for purposes of the evidentiary hearing and related proceedings only and was not to be duplicated or disclosed to any person.

On September 16, 2009, Respondent faxed Hart a copy of the subpoena duces tecum and the Court's protective order. According to Respondent's counsel, Hart initially agreed to provide the most recent draft of the book as well as the draft he previously provided to Petitioner's counsel. However, Hart subsequently objected to the subpoena and indicated that he would not provide any draft of his book.

## II. DISCUSSION

Respondent argues that it is entitled to discovery of the most recent draft of the manuscript because Hart will probably be a witness at the evidentiary hearing and the content of the book is relevant to Hart's credibility and bias. Hart counters that his work is protected by the First Amendment and that the compelled discovery of manuscripts such as his would chill the creative process of writers and infringe upon a free press.

As an initial matter, the Court finds that Hart's manuscript falls within the journalist's privilege. As explained in <u>Shoen v. Shoen</u>, 5 F.3d 1289, 1293 (9th Cir. 1993) ("<u>Schoen I</u>"), the journalist's privilege is not limited to reporters employed in the traditional print or broadcast media, but also extends to investigative reporting, regardless of the medium used to report the news to the public. The Ninth Circuit explained, "Investigative book authors, like more conventional reporters, have historically played a vital role in bringing to light 'newsworthy' facts on topical and controversial matters of great importance." <u>Id.</u> at 1293. Because Hart's book qualifies as an investigative book, Hart can invoke the journalist's privilege with respect to the manuscript.

However, the journalist's privilege is qualified, not absolute. <u>Schoen I</u>, 5 F.3d at 1292. Once the privilege is properly invoked, the burden shifts to the requesting party to demonstrate a sufficiently compelling need for the journalist's materials to overcome the privilege. <u>Id.</u> at 1296. Where the information sought is not confidential, the civil litigant seeking to overcome a valid assertion of the journalist's privilege by a nonparty must establish that the requested material is: " (1) unavailable despite exhaustion of all reasonable alternative sources; (2) noncumulative; and (3) clearly relevant to an important issue in the case. We note that there must be a showing of actual relevance; a showing of potential relevance will not suffice." <u>Shoen v. Shoen</u>, 48 F.3d 412, 416 (9th Cir. 1995) ("<u>Schoen II</u>").

Furthermore, like other privileges, it appears that the journalist's privilege may be waived. For example, in <u>Pinkard v. Johnson</u>, 118 F.R.D. 517 (M.D. Ala. 1987), the court held that a newspaper reporter waived his qualified reporter's privilege with respect to a certain conversation he had with the defendant because he had already provided a signed affidavit about the conversation to plaintiff's counsel. "A reporter is not free to give a sworn statement to a litigant, and later invoke the qualified reporter privilege to keep this information from the Court." <u>Id.</u> at 523. In the interests of fairness, a journalist/author should not be permitted to disclose information to advance the interests of one litigant and then invoke the journalist's privilege to prevent discovery of this same information by another litigant. Cf. <u>Sims v. Blot</u>, 543 F.3d 117, 132 (2d Cir. 2008) (explaining that a waiver of testimonial privileges may be

1 implied in circumstances where it is called for in the interests of fairness, such as when the
2 party attempts to use the privilege both as a shield and a sword by making selective
3 disclosures.)

4       The Court finds an implied waiver of the journalist's privilege as a result of Hart's
5 production of the manuscript to Petitioner's counsel. Hart admits that he is biased in favor
6 of Petitioner, and it can be assumed that Hart wished to be of assistance to Petitioner's
7 counsel. It would be unfair and improper to allow Hart to invoke the journalist's privilege with
8 respect to this same material now that Respondent's counsel wants to see it.

9       However, in deference to the goals of protecting the free flow of information and
10 protecting the privacy of editorial processes, the Court will only compel production of the
11 current manuscript to the extent that it deals with the specific topics that are the subject of
12 the upcoming evidentiary hearing.[1] These topics include: Richard Savocchio; Raul Garcia;
13 Johnny Mendez; Hart's conversations with Detective Carlos Chacon; Chacon's alleged bias
14 against the Ayalas; Chacon's insertion of himself into the homicide investigations and
15 immediate identification of the Ayalas as the perpetrators; Chacon's alleged intimidation of
16 witnesses including Joe Moreno's daughter and wife and Tracy Pittman; and the intimidation
17 of Rafael Mendoza Lopez and Jenifer Lopez by Chacon or other authorities.

18       After Hart testifies at the evidentiary hearing, the Court will determine whether any
19 other portions of the manuscript may be at issue.

20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///

27 ────────────────

28 [1] Although Hart does not have a complete copy of the manuscript he provided to Petitioner's counsel, Hart testified that the current manuscript is substantially the same as the older version with respect to the parts that relate to the evidentiary hearing.

### III.  CONCLUSION

For the reasons discussed above, Respondent's motion to compel **is GRANTED IN PART** and **DENIED IN PART**.  Within 30 days of the filing of this Order, Eric Hart shall produce to Respondent's counsel a copy of the portions of the manuscript identified above. Respondent shall pay the copying costs.

**IT IS SO ORDERED.**

DATED:  November 9, 2009

Honorable Barry Ted Moskowitz
United States District Judge

Copy to:

Eric D. Hart
270 E. Douglas Avenue
El Cajon, California 92020